UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK D. HALL,

    Plaintiff,

v.                                                      Case No. 1:18-cv-1161
                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his application for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of September 9, 2015. PageID.31. Plaintiff identified his disabling condition as a back injury. PageID.207. Prior to applying for DIB, plaintiff completed one year of college and had past relevant employment as a corrections officer. PageID.208. An administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision denying benefits on March 23, 2018. PageID.31-41. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I.    LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42

U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

2

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 9, 2015, and that he meets the insured status requirements of the Social Security Act through December 31, 2021. PageID.41. At the second step, the ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine with radiculitis, status post compression fracture of L1, and status post ankle fracture. PageID.33. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that

3

met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: standing/walking is limited to a total of four hours in an eight-hour workday for no more than 30 minutes at a time; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; and no exposure to workplace hazards such as unprotected heights or dangerous moving machinery.

PageID.36. The ALJ also found that plaintiff is unable to perform his past relevant work as a corrections officer. PageID.39-40.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.40-41. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light work such as clerk (90,000 jobs), office helper (22,000 jobs), and mail clerk (40,000 jobs). PageID.40-41. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 9, 2015 (the alleged onset date) through March 23, 2018 (the date of the decision). PageID.41.

### III. DISCUSSION

Plaintiff set forth one issue on appeal:

**The ALJ's evaluation of Dr. Prouty's medical opinion is contrary to law, not supported by substantial evidence, and the ALJ did not sufficiently articulate the reasons for discounting the opinion.**

At the time he completed the medical opinion at issue, Dr. Prouty had been treating plaintiff for about five years. PageID.950. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d

4

762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404,1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Prouty's opinions set forth in the doctor's "Physical Medical Source Statement" as follows:

On July 5, 2017, Don Prouty, M.D., provided a medical source statement regarding the claimant's functional ability and opined the claimant is capable of the following: sitting for 5-10 minutes at one time; standing for five minutes at one time; sitting for less than two hours total in an eight-hour workday; standing/walking about two hours total in an eight-hour workday; requires a job that permits shifting positions at will from sitting, standing, or walking; requires a job that allows periods of walking for five minutes every fifteen minutes in an eight-hour workday; must elevate his legs to chest level for 80% of the workday; can lift and carry less than ten pounds occasionally, 10-20 pounds rarely, and 50 pounds never; can never twist, stoop, or climb ladders; can rarely crouch or squat; can occasionally climb stairs; and will be off task ten percent of the workday (Exhibit 26F/2-4). The undersigned assigns little weight to this opinion because it is inconsistent with the opinions of the DDS medical consultant, Dr. Carr, and Dr. Flood (discussed below); and is inconsistent with the claimant's activities of daily living showing he is able to do the following: care for his two dogs, maintain personal hygiene without reminders, take medication without reminders, prepare his own meals, complete household chores, drive a car, grocery shop, and manage his finance (Exhibit 4E; and Claimant's Hearing Testimony). Furthermore, Dr. Prouty's opinion is not supported by the medical record which shows degenerative disc disease that some treatment providers described as mild, and an ankle fracture that has healed well since surgery (Exhibits 4F/5, 9; 8F/13, 19, 29; 10F/1; 11F/4; 19F/4; 24F/16; and 29F/2-4). Therefore, this opinion is given little weight.

PageID.38-39.

Neither of the two other physicians referenced by the ALJ, David Carr, D.O., and John Flood, D.O., were treating physicians. Dr. Carr examined plaintiff on May 4, 2016. PageID.694. At that time, the doctor opined that plaintiff could not return to his normal work as a corrections officer due to the pathology in the low back as well as the physical conditions and unpredictable catastrophes inherent in his work as a corrections officer. PageID.704.[1] Dr. Carr felt that plaintiff could return to work with: a sit/stand/walk option as needed; no frequent, prolonged, extreme, or repetitive bending or twisting of the low back; and no lifting, carrying, pushing, or pulling over 10-15 pounds 4 times an hour. PageID.704. The doctor felt that plaintiff had a poor prognosis with regard to the degenerative disease in the lumbar spine "because the degenerative conditions in his low back are already present and are progressive." *Id*.

---

[1] The Court notes that plaintiff had worked as a corrections officer for 27 years. PageID.698.

Dr. Flood performed an independent medical examination of plaintiff on August 22, 2107. PageID.1071. The doctor's diagnosis included multilevel lumbar degenerative disc disease with chronic low back pain, compression fracture of L1, and no evidence of lumbar radiculopathy. PageID.1074. Plaintiff had history of back pain since 2002. PageID.1072. Plaintiff suffered back strain in August 2011 and was off of work for about 7 months (plaintiff was struck in the face by a prisoner and fell on the cement floor while restraining the prisoner). PageID.1071. Plaintiff's MRI from October 2012 indicates that he suffered a fracture of L1 sometime between the 2011 incident and the date of the MRI. PageID.1075. Plaintiff also fractured his ankle in 2014. PageID.1072. The doctor noted in part that "[plaintiff's] inability to work is related to his lumbar degenerative disc disease and degenerative changes at the T12-L1 disc space, as related to his fracture." PageID.1075. Dr. Flood stated that,

> Were he to return to work, I would recommend no sitting for more than an hour and no standing or walking for more than 30 minutes continuous. He would have no inmate restraints. Restrictions would be based upon his lumbar degenerative disc disease and not the 2015 work-related event. I would impose a 20 pound weight limit.

PageID.1075.

The Court concludes that the ALJ did not articulate good reasons for assigning Dr. Prouty's limitations "little weight." While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).

7

Here, the Court cannot trace the path of the ALJ's reasoning with respect to the weight given to Dr. Prouty's limitations. The ALJ discounted Dr. Prouty's opinion because plaintiff could perform certain daily activities, "some treatment providers" described plaintiff's degenerative disc disease as mild, and plaintiff's ankle fracture had healed well since surgery.

As an initial matter, it is well established that an ALJ may consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments. *Walters*, 127 F.3d at 532. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted). Here, however, the ALJ did not clarify how plaintiff's activities (*e.g.*, caring for his dogs, maintaining personal hygiene, preparing his own meals, completing household chores, driving a car, and grocery shopping) were inconsistent with Dr. Prouty's limitations. Nor did the ALJ explain how these activities demonstrated that plaintiff could perform light exertional work, which "involves lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." *See* 20 C.F.R. § 404.1567(b) (emphasis added).

Next, given the record in this case, the ALJ's brief references to the medical record regarding descriptions of his degenerative disc disease as "mild" and his ankle fracture as "well healed" do not constitute good reasons for rejecting Dr. Prouty's opinions. In this regard, while the ALJ relied on the opinions of examining physicians Drs. Carr and Flood to discount Dr. Prouty's opinion, neither of the examining doctors characterized plaintiff's degenerative disc disease as "mild." Finally, while the ALJ found that Dr. Prouty's opinion is inconsistent with the

8

"DDS Examiner" and "DDS Medical Consultant" (PageID.38-39), it is unclear which opinion(s) the ALJ is referencing.[2] Accordingly, this case will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Prouty's opinion.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Prouty's July 5, 2017 opinion. A judgment consistent with this opinion will be issued forthwith.

Dated: March 23, 2020 /s/ Ray Kent
United States Magistrate Judge

---

[2] When plaintiff filed his claim in 2016, the applicable regulation described state agency medical consultants as "highly qualified physicians . . . who are also experts in Social Security disability evaluation" *See* 20 C.F.R. § 404.1527(e)(2)(i). The Court notes that the ALJ cannot be referring to Dr. Carr or Dr. Flood, because neither of these physicians were DDS examiners or consultants. Dr. Carr performed an independent medical evaluation for an insurance carrier, York Risk Services Group, apparently related to plaintiff's claim against his employer, the State of Michigan. PageID.694. Dr. Flood prepared an independent medical examination of plaintiff for the doctor's client, identified as the "Labor Division – State of Michigan." PageID.1071.

9